


IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| JUAN PEREZ | : | NO. 09-233 |

**FILED**
JAN 15 2010
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**MEMORANDUM**

PRATTER, J.                                                                                                  JANUARY 15, 2010

**INTRODUCTION**

Relying on unjustified innuendo and the stylistic devices of aporia and rhetorical questioning[1] rather than evidence or logic, counsel for Defendant Juan Perez seeks to suppress the critical physical evidence gathered for use against Mr. Perez in this prosecution for violation of 21 U.S.C. § 841(a)(1),(b)(1)(D) Possession with Intent to Distribute Marijuana; 18 U.S.C.

---

[1] In the Memorandum In Support of Motion To Suppress Physical Evidence there are at least 13 instances where gratuitous rhetorical questions are posed, apparently as a way to challenge or deride the opposing position. In other instances, the technique of aporia (i.e., expressing doubt - - often feigned - - by which the speaker appears uncertain as to what he should think, say or do) was employed. While the atypical pattern may provide some respite from conventional briefing, the Court finds both rhetorical devices - - especially when so generously used without the benefits of any subtlety - - ultimately distracting from the legal points Mr. Perez apparently hoped to make. By concentrating only on the issues raised (instead of on the overly argumentative manner by which they were addressed), the Court could understand full well Mr. Perez's positions. The language style employed did not - - and could not - - improve the chances of success of those positions. Furthermore, the defense position is certainly not aided by the startling, unwarranted and unveiled inflammatory suggestion that the police officers in this case comported themselves with "striking similarity" to a notorious police officer who pled guilty to charges of lying under oath. See defense Memorandum In Support at p.1.

§924(c)(1) Possession of a Firearm in Furtherance of a Drug Trafficking Offense; and 18 U.S.C. § 922(g)(1) Convicted Felon in Possession of a Firearm.

Specifically, Mr. Perez challenges the Government's characterization as voluntary his consent to search his car on the grounds that the alleged consent was post-arrest and without benefit of <u>Miranda</u> warnings. He also disputes the propriety and usefulness of a K-9 officer's "alerting" to drugs in Mr. Perez's car. Finally, Mr. Perez also argues that he ought not to have been patted down following the police officers' investigatory stop of his vehicle. In other words, Mr. Perez challenges (1) whether the police had legal cause to stop his car, (2) whether the police properly searched either the interior of his car or the car's trunk area, and (3) whether the police were legally justified in searching his person.

Having conducted an evidentiary hearing during which the Court could assess the credibility of the witnesses, and having reviewed the parties' written submissions on the salient issues, the Court concludes that the Government's use of the evidence will be permitted at trial, and the Perez Motion must be denied.

## FACTUAL BACKGROUND

Late at night on the day after Christmas 2008, Philadelphia Police Officers John Bender and William Branish saw Mr. Perez driving through, i.e., "rolling" through, stop signs and running a red light on Cumberland Street, coupled with their observation that Mr. Perez appeared to be speeding[2]. The officers pulled the car over, and Officer Branish asked Mr. Perez for

---

[2] The officers eventually cited Mr. Perez for these traffic violations; he went to court, was found guilty and was ordered to pay $181 as a fine.

identification. Officer Bender promptly noticed Mr. Perez's glassy red eyes and also smelled a strong odor of unburnt marijuana coming from the Perez car's interior.

Upon coming up to the stopped car on foot, Officer Bender testified that he recalled seeing a large baggie in the car. The officer asked Mr. Perez about the baggie and he reportedly said that, though now empty, it had previously held marijuana. According to Officer Bender, Mr. Perez also admitted to having smoked marijuana earlier in the evening. Officer Branish corroborated his partner's account of this verbal exchange.

Conferring with each other, the officers determined to arrest Mr. Perez for driving under the influence. They directed Mr. Perez to get out of his car. When Officer Bender checked Mr. Perez for contraband and weapons, he found a baggie containing suspected loose marijuana and a blunt, as well as cash. Mr. Perez was placed in handcuffs and put into the back seat of the police car. By this time, according to their testimony, both officers had smelled, emanating from the Perez car, what their training and experience convinced them was unburnt marijuana.

Having been restrained, and hearing the officers discuss the odor of marijuana, again according to the police (specifically Officer Bender), Mr. Perez made unsolicited statements that he was not a bad person and that the officers could search his car if they wished. When Officer Branish asked Mr. Perez if there were more drugs in the car, Mr. Perez apparently said there were not, and again said the officers could search the car. The officers stated that Mr. Perez's consent to search the car was knowing, voluntary and spontaneous and not the result of any physical or psychological coercion which they testified they did not exert. They interpreted Mr. Perez's consent as including his consent for them to search the trunk of the car, though they elected to limit themselves at that time to the areas in plain view in the interior of the car. According to the

officers, they continued to experience the very strong odor of marijuana in the car, something that other arriving officers also commented upon.

Ultimately, the on-site officers decided to call for a K-9 unit to come and conduct a search of the car. Officer Bender made that request at approximately 1:00 a.m. Some 20 minutes later, canine officer Azur, together with his handler/partner, Officer Raymond Plymouth, arrived at the scene. Azur, a properly trained[3] dog qualified to find narcotics, was called into service by Officer Plymouth who first secured the area, readying it for Azur to move ahead. Once given the command to look for narcotics, Azur alerted to the area of the trunk of the Perez car. Officer Plymouth conveyed the results of Azur's search to Officers Bender and Branish and then he and Azur left the scene.

At this point, according to Officer Branish, he again asked Mr. Perez if he was certain there was nothing in the car; he was again assured there was not. Mr. Perez also again told the officers they could check the car themselves.

Believing that they had sufficient probable cause to search the trunk of the car, they proceeded to do so, using a key to unlock the trunk. In the trunk, Officer Bender saw a large green trash bag with what appeared to be marijuana inside[4]. He also saw a handgun next to the bag. The officers seized these items. The officers also inventoried the cash they had seized from Mr. Perez, counting out $2,485. Mr. Perez, who had been in the back of the police car through

---

[3] Defense counsel labored mightily to try to undermine Azur's training - - or the results of that training - - in the context of this case. The defense challenge in this regard was wholly unavailing. It was clear to the Court that the training regimen described by Officer Plymouth that was required of Azur and Officer Plymouth was intensive, focused, rigorous, appropriate to the tasks at hand, i.e., narcotics recognition, and successful.

[4] Seven smaller bags of marijuana were found in the large trash bag.

4

the officers' seizure of the items from the trunk, was transferred to a police wagon for transport to the police detention unit. At the direction of East Detectives, where Officer Bender had called for instructions, Officer Bender drove Mr.Perez's car, along with the seized drugs, gun and cash, to East Detectives where it was processed. While the evidence was at East Detectives, and as it was transported to the police lab, various police personnel reportedly continued to note the strong odor of marijuana. After photographs of the car were taken, Officer Bender returned the car to the site of the stop, locked it and secured the keys at the 26th District police station.

## **DISCUSSION**

### A. The Car Stop

Mr. Perez incorrectly contends that the officers' stop of his car was unlawful. Officers Bender and Branish acted appropriately to stop Mr. Perez because they had probable cause to believe that the driver of the Perez vehicle, i.e., Mr. Perez, had committed a traffic violation, namely running stop signs and a red light. The officers' testimony, the record of Mr. Perez having been found guilty of the violation and his own admissions during a recorded phone conversation while he was being held at the Federal Detention Center operate to persuade the Court that the Government has met its burden to prove that the officers' stop of the vehicle was proper because they had sufficient probable cause to do so. See Ohio v. Robinette, 519 U.S. 33 (1996); Whren v. United States, 517 U.S. 806 (1996); United States v. Moorefield, 111 F.3d 10 (3rd Cir. 1997).

### B. Efficacy of Searches

This case presents several, arguably separate incidents of searches:

- the visual inspection of the interior of the car immediately upon the car stop during which the police found the empty baggie, prompting Mr. Perez to say he had smoked marijuana earlier that evening
- the initial frisk search of Mr. Perez's person as a result of which the police seized a clear baggie containing suspected marijuana and a blunt, as well as cash, following which Mr. Perez reportedly first gave his consent for a further search of the car
- the officers' second visual search of the interior of the car
- the search around the exterior of the car by K-9 unit officer Azur and his handler/partner Officer Plymouth as a result of which Azur unequivocally alerted to the trunk area of the car
- reportedly following further affirmative verbal consent by Mr. Perez, the officers' unlocking the trunk and searching in the trunk, as a result of which they discovered and seized a handgun and a large trash bag containing seven smaller bags of marijuana.

As an initial matter, a police officer who has properly stopped a car for a suspected traffic violation may exercise reasonable control over the car and its passengers, including ordering the passengers out of the car. Maryland v. Wilson, 519 U.S. 408 (1997); United States v. Bonner, 363 F.3d 213 (3rd Cir. 2004). This legal authorization, in the appropriate circumstances, can also justify an officer's frisking the driver or a passenger who has been ordered from a car, as Mr. Perez was here. Arizona v. Johnson, 129 S.Ct. 781 (2009). See also Terry v. Ohio, 392 U.S.

(1968)[5].

In this case, once Officers Bender and Branish stopped Mr. Perez's car, the Court concludes that they exercised reasonable dominion over Mr. Perez and his car: the police officers got out of their car, one approached the driver's side of the Perez car and the other went to the passenger's side, Mr. Perez rolled down his driver's side window when Officer Branish promptly asked for his drivers licence, insurance and a registration card. Seeing that Mr. Perez had red, glassy eyes and smelling the strong odor of unburnt marijuana coming from the car, the officers continued their activities with a heightened sense of law enforcement possibilities, including placing Mr. Perez in the police car. These observations and events justified the officer's decision to arrest Mr. Perez. Hence, the arrest of Mr. Perez was lawful. The search of Mr. Perez's person was, therefore, lawful, at a minimum as a prudent security precaution, as was the initial cursory observation of the car interior. Accordingly, the frisk of Mr. Perez and the seizure of the cash and the baggie of marijuana and a blunt from him were pursuant to a lawful arrest.

With respect to the searches believed by the officers to be incident to Mr. Perez's expression of his consent, the officers' searches of him and the car pursuant to receiving Mr. Perez's consent likewise nets the Government admissible evidence.

While the Fourth Amendment prohibits unreasonable warrantless searches and seizures, that prohibition is inapplicable in "situations where voluntary consent has been obtained, either from the individual whose property is searched . . . or from a third party who possesses common authority over the premises." Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). Therefore, while

---

[5] In Terry, the Supreme Court held that a police officer may conduct an investigatory warrantless stop if specific and articulatable facts, together with all rational inferences, suggest that the suspect may be involved in criminal activity.

warrantless searches "are per se unreasonable under the Fourth Amendment - - subject only to a few specifically established and well-delineated exceptions," Arizona v. Gant, 129 S.Ct. 1710, 1716 (2009) (citation and internal quotation marks omitted), a valid consent is one such exception. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

The validity of a purported search consent turns in large measure on whether the consent was given voluntarily. The issue of voluntariness is, in turn, highly fact-intensive, depending upon the totality of the circumstances, including the accused's own characteristics, the use or non-use of coercion, the presence of duress, the accused's then-present ability to comprehend his situation, and the like. Id at 226-228. A failure to object to a search can also be considered as part of the mix of relevant circumstances. United States v. Morales, 861 F. 2d 396, 400 (3rd Cir. 1988). The burden to prove consent is on the Government.

Here the officers did not have a warrant to search Mr. Perez's car. However, both Officers Bender and Branish testified that Mr. Perez at least twice gave verbal consent to search the car, reasonably interpreted by them to include consent to search the trunk[6]. As described consistently and credibly by the two officers (and supplemented by Officer Plymouth's description of the atmosphere at the scene), the scene at the time of the search seemed calm and without drama or agitation. Although Mr. Perez had been handcuffed and otherwise restrained prior to giving consent to search, "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." United States v. Watson, 423 U.S. 411,

---

[6] Although the officers testified as to their belief that Mr. Perez's verbal consent included the trunk, they did not undertake to search the trunk until after they had the added justification brought on by the clear alert by K-9 officer Azur for narcotics in the area of the trunk.

8

424 (1976).

Both Officers Bender and Branish testified that neither of them coerced, threatened, physically intimidated or otherwise exerted force against Mr. Perez to secure his consent to a search. Mr. Perez, an adult with a high school education, did not object to the search or express reservations about its scope. The searches of the car led to the police officers' quick discovery of bagged marijuana and a handgun, so one might well wonder why Mr. Perez would have volunteered, apparently on his own initiative, to offer his car up for a police search. Nonetheless, on the evidence presented the Court concludes that, even if it was a perplexing or unwise act on his part, Mr. Perez's consent was knowing and voluntary, and the police were entitled to rely upon it to search the entire car.

Even without the consent by Mr. Perez, however, based upon their having smelled unburnt marijuana in the car and the K-9 officer having alerted to the trunk, the officers had probable cause to search Mr. Perez's car, including the trunk. Under such circumstances, where there was a "fair probability that contraband or evidence of a crime will be found in a particular place," United States v. Hodge, 246 F.3d 301, 305 (3rd Cir. 2001) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)), no search warrant was required. United States v. Ross, 456 U.S. 798, 809 (1982). See also, Karnes v. Strutski, 62 F.3d 485, 498 (3rd Cir. 1995); United States v. Salmon, 944 F.2d 1106, 1123 (3rd Cir. 1991). That probable cause exists based on the officers having smelled the unburnt marijuana has been recognized by our Court of Appeals and justifies a subsequent search of an entire car. United States v. Ramos, 443 F.3d 304, 308 (3rd Cir. 2006). Here, both Officer Bender and Officer Branish were well acquainted through their law enforcement experiences with the smell of marijuana, and they both were adamant that they

smelled the strong odor of marijuana in Mr. Perez's car promptly upon having come close to an open car window. The officers' testimony in this regard was persuasive and adequately justified a warrantless search of the car for contraband.

In this case, however, even more probable cause to expect to find narcotics in the Perez car was available through the services provided by K-9 officer Azur. Narcotics-recognition canine officers can and do establish probable cause when they alert their handlers to hidden narcotics. See e.g., United States v. Massoc, 867 F.2d 174, 176 (3rd Cir. 1989); United States v. Burton, 193 F.R.D 232 (E.D. Pa. 2000). Both the training of Azur and his handling on site in connection with Mr. Perez's car met applicable requirements and mandates for relying upon the dog's on site actions for the purposes of finding probable cause to proceed with a further search for narcotics in the Perez car.

In the face of the Government's evidence, Mr. Perez testified, as did his girlfriend and her sister. The Court agrees with the Government that the two women's testimony did not undermine the officers' description of events on the evening at issue[7]. Although Mr. Perez did endeavor to contradict the officers testimony as to his traffic violation, as well as to his consent to the search and the odor in the car, his account of events was not credible when compared to the descriptions of events proffered by the officers. Mr. Perez also contended that the police had fully searched the trunk before the K-9 unit arrived, and on this issue Mr. Perez was no more persuasive or believable than he was on other issues. In the final analysis, Mr. Perez's credibility

---

[7] The ladies' testimony was primarily intended to create a chronology of events whereby it would appear that the car, including the trunk, was fully searched before the K-9 unit arrived. However, their rendition of events did not document that sequence of events because their arrival at the scene followed the work of the K-9 unit so that seeing the trunk open at the point would be fully expected. More fundamentally, their testimony bolstered that of the officers.

suffers from the discrepancy between his testimony at the suppression hearing and his candid comments as recorded while he spoke to his girlfriend from the Federal Detention Center and discussed his directives for the destruction or creation of evidence for this very case. Under the circumstances, the Court finds Mr. Perez unworthy of belief on the matters at issue in the motion to suppress.

## CONCLUSION

For the foregoing reasons, the Motion To Suppress the physical evidence seized from Mr. Perez's person and his car following the car stop on December 26, 2008 is denied.

BY THE COURT

GENE E.K. PRATTER
*United States District Judge*